# IN THE COURT OF APPEALS OF IOWA

No. 18-0890
Filed September 12, 2018

**IN THE INTEREST OF R.M. and K.M.,**
**Minor Children,**

**T.M., Mother,**
    Appellant.

**R.M., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Mills County, Craig M. Dreismeier, District Associate Judge.


A mother and father appeal the termination of their parental rights to their children. **AFFIRMED ON BOTH APPEALS.**


DeShawne L. Bird-Sell of Sell Law, PLC, Glenwood, for appellant mother.

J. Joseph. Narmi, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Abby L. Davison of State Public Defender Office, Council Bluffs, guardian ad litem for minor children.


Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother and father appeal the termination of their parental rights to their children, born in 2012 and 2014.[1] Both parents challenge the evidence supporting the grounds for termination cited by the district court. The father also argues the State failed to make reasonable efforts toward reunification, termination was not in the children's best interests, and the court should have declined to terminate his parental rights based on the strength of the parent-child bond.

## I. *Grounds for Termination*

The facts underlying the termination petition were summarized in a prior opinion of this court:

> The DHS first began providing services to this family in September 2013, before K.M. was born, after finding the home full of unwashed clothing, spoiled food, and dirty dishes. All the utilities had been shut off. In an interview with a DHS social worker, Tera admitted using marijuana; Robert was using methamphetamine. The DHS temporarily removed M.S. and R.M. to their grandparents' home, but the children returned to their parents' care in November 2013 after Tera and Robert agreed to voluntarily participate in services.
> After K.M.'s birth, Tera and Robert continued to struggle with the issues that first prompted DHS involvement. In January 2015, the three children were briefly removed from Tera and Robert's care after a child protective worker again observed unsanitary conditions in the home and found Tera and Robert were regularly leaving M.S. and R.M. in a locked bedroom. Then on March 23, 2015, the children were removed after Tera and Robert tested positive for illegal substances. Both Tera and Robert tested positive for methamphetamine and amphetamines; Tera also tested positive for barbiturates and marijuana. At the time of their removal, the children "were wearing dirty clothes and obviously in need of a bath." The children have consistently been in foster or shelter care since that time.

*In re M.S.*, No. 16-1860, 2017 WL 362606, at *1 (Iowa Ct. App. Jan. 25, 2017).

---

[1] A third child of the mother is not involved in these proceedings.

After recounting this history, the court turned to the grounds for termination cited by the district court. The court concluded those grounds were not satisfied, requiring reversal of the termination ruling. The matter was remanded to the district court.

On remand, the department of human services reinitiated reunification services, including supervised visits with the children. The parents participated in visits. They were less compliant with drug-testing services.

The State again petitioned to terminate their parental rights to the children. Following a hearing, the district court granted the petition pursuant to Iowa Code section 232.116(1)(f) and (h) (2017), which require proof the children cannot be returned to the parents' custody. The district court found (1) the maternal grandmother's home in which the parents had been living lacked sufficient space to accommodate the children; (2) the parents needed "ongoing support" with parenting skills and "to assure the daily needs of the children were being met"; and (3) "[b]oth parents . . . struggled in compliance with substance abuse treatment and recommendations."

On our de novo review, we find clear and convincing evidence to support the third basis for termination. The children were removed from the parental home approximately three years prior to the second termination hearing. When services were restarted in February 2017, the parents were well aware of their obligation to refrain from using illegal substances. To her credit, the mother obtained an updated substance abuse evaluation and completed outpatient substance abuse treatment. But nine months after the reinitiation of services, she tested positive for methamphetamine, amphetamine, and THC. She declined further drug testing

despite the department's willingness to have the tests performed at her home. The father was similarly noncompliant, albeit more sporadically. He tested positive for methamphetamine three months after services were reinitiated and missed the next test. Like the mother, he made efforts to improve, undergoing six consecutive negative drug tests. But, beginning four months before the second termination hearing, he missed or refused eleven drug tests.

The department social worker assigned to the case stated no-shows for drug testing were deemed positive tests. In light of the missed drug screens, she testified she would "not feel safe" transitioning the children to semi-supervised visits with their parents, which was the first step toward reunification. She recommended against returning the children to the parents' custody.

The service provider who supervised visits agreed. While acknowledging the visits went well, he stated he "would not" be comfortable leaving the parents alone with the children.

The parents point out that the department expressed no qualms about leaving the parents alone with the mother's seven-year-old niece, who lived in the maternal grandmother's home. But the niece was not a subject of these proceedings. And, while the parents' positive interactions with her are commendable, the parents' ability to engage with children for a few hours at a time was not in question. The key issue was their long-term ability to care for their children without assistance. Three years after the children's removal, there was every reason to believe ongoing drug use would compromise the parents' ability to maintain a safe and healthy environment.

We conclude the State proved the grounds for termination cited by the district court.

## II.    *Reasonable Efforts*

The department is obligated to make reasonable efforts to reunify a parent and child.  *See* Iowa Code § 232.102(7) (stating department must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).  The father argues the agency failed in this obligation.  He points to the single, weekly, four-hour visit he was afforded with the children.  He maintains the department could have left the children in a foster home that was closer to the parents and could have afforded him telephone, Facebook, and Skype contact with the children.

The department social worker listed a litany of services that were provided the family, including supervised visits.  According to her, "[w]hen [the parents] . . . asked for more visits, we said we could split up and do a couple of visits a week for a couple hours."  The parents "agreed to [a single visit] because of the distance with the kids."

The department's willingness to facilitate more frequent visits notwithstanding the distance obviated the need to move the children to a nearby foster home.  Notably, the children had lived in the more distant foster home since December 2015 and were doing well there.  The first two foster homes in which they stayed were arguably closer but served as placements for only six and three months respectively.

As for the department's denial of telephone contact, the department social worker testified the foster parents were not required to disclose their phone number and they had elected to keep it private. Additionally, the service provider could not recall that the father made a request for Facebook or Skype contact with the children. Under these circumstances, we conclude the department satisfied its reasonable-efforts mandate.

## III. Best Interests, Exception to Termination

The father argues termination was not in the children's best interests and the district court should have declined to terminate his parental rights based on the closeness of the parent-child bond. *See In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016) ("Once we have established that at least one ground for termination under section 232.116(1) exists, the next step of our analysis is to evaluate whether the termination of parental rights would be in the best interest of the child under section. 232.116(2)."); *see also* Iowa Code § 232.116(3)(c) ("The court need not terminate the relationship between the parent and child if the court finds any of the following: . . . There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."). On our de novo review, we agree with the district court that termination was necessary to ensure the children's safety and the bond between the father and children did not warrant a denial of the termination petition. As the district court stated,

> This Court has no doubt that the children love their parents and vice versa. There was testimony that they do share a bond with one another. Unfortunately, this alone does not give them the permanency they need. The parents have struggled with a myriad of issues which has prevented reunification. Services have been

offered to correct the problem but unfortunately this simply has not occurred. It is not safe to return the children to the care of their parents now or in the near future. Further, even if the children were returned, in-home services to assist the parents would need to be in place in order to assure the children's safety. This is not permanency.

We affirm the termination of the parent's rights to the children.

**AFFIRMED ON BOTH APPEALS.**